**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **AMBER JOHNSON**, | § | |
| ON BEHALF OF HERSELF AND OTHERS | § | |
| SIMILARLY SITUATED | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| **vs.** | § | **CASE NO. 4:25-CV-2655** |
| | § | |
| **SEKAI NIGHT AND DAY,** | § | |
| **ERICK ROBERTS, AND** | § | |
| **MARIO AZODINIA, INDIVIDUALS** | § | |
| | § | |
| | § | |
| | § | |
| *Defendants*. | § | **JURY REQUESTED** |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY REQUEST

TO THE HONORABLE JUDGE OF THIS COURT

COMES NOW Amber Gatson ("Plaintiff"), individually and on behalf of all others similarly situated, complaining of Sekai Night and Day, a/k/a Sekai ("Sekai"), Erick Roberts ("E. Roberts"), and Faramarz 'Mario' Azodinia ("F. Azodinia") individuals, (collectively "Defendants"), and for causes of action will respectfully show unto this Court the following:

### PARTIES AND SERVICE

1.      Plaintiff is a citizen of the United States of America, the State of Texas and resides in Harris County, Texas. Plaintiff's written consent opting into this action is attached as Exhibit A.

2.      The Collective Members are all current and former servers (ie. Servers, bottle girls, aiters, waitresses, and the like) who were employed by Defendants at any time beginning three (3) years prior to the filing date of this Complaint to the present.

1

3.      Defendant Sekai Night and Day, a/k/a Sekai is a Texas company with its principal office located in Houston, Texas.  Defendant can be served with process through its registered agent for service of process, 1505 St Emanuel St, Houston, TX 77003, in any manner the Federal Rules of Civil Procedure permit.

4.      Defendant Erick Roberts is the owner, manager and director of Sekai Night and Day, a/k/a Sekai and may be served at 1505 St Emanuel St, Houston, TX 77003, or wherever he may be found and in any manner the Federal Rules of Civil Procedure permit.

5.      Defendant Faramarz 'Mario' Azodinia is the owner, manager and director of Sekai Night and Day, a/k/a Sekai and may be served at 1505 St Emanuel St, Houston, TX 77003, or wherever he may be found and in any manner the Federal Rules of Civil Procedure permit.

6.       The true names, capacities or involvement, whether individual, corporate, governmental or associate, of all managers and owners of Sekai are unknown to Plaintiff. Plaintiff prays for leave to amend this Complaint to show their true names and capacities when the same have been finally determined. Plaintiff is informed and believes upon such information and belief, that each of the unknown Defendants are negligently, intentionally, strictly liable or otherwise legally responsible in some manner for the events and happenings herein referred to, and negligently, strictly liable intentionally or otherwise caused injury and damages proximately thereby to Plaintiff and those similarly situated.

## JURISDICTION AND VENUE

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) as this case is brought under the laws of the United States.

8.    All parties are subject to personal jurisdiction in the Southern District of Texas. Defendants made themselves subject to this Court's jurisdiction by maintaining a physical presence and business operations in this District.

9.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) & (c) because Defendants reside in this District and most of the relevant facts occurred in this District.

### DEFENDANTS ARE REQUIRED TO COMPLY WITH THE FLSA

10.    Defendant Sekai Night and Day, a/k/a Sekai is a "covered enterprise" because it is a business engaging in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1). In that said enterprise, they have had employees engaging in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce for any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated) for at least each of the last three years.

11.    At all relevant times, Defendants acted directly or indirectly in the interest of an employer with respect to Plaintiff and the Collective Members.

12.    At all relevant times, Plaintiff and the Collective Members were individual "employees" of Defendant (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)).

13.    Finally, as part of their employment for Defendant, Plaintiff and the Collective Members handled food and other food service items that were purchased across state lines or traveled in interstate commerce, or both. Plaintiff and the Collective Members also served customers who were traveling from out-of-state or across interstate lines. In addition, Plaintiff and the Collective Members regularly and frequently processed interstate credit card transactions.

## NATURE OF THE ACTION

14.     This is a private civil action brought against Defendants pursuant to Section 16(b) of 29 U.S.C. § 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). Defendants failed to pay any and all of their employed servers the mandatory minimum wage and overtime according to the provisions of the FLSA.  Further, Defendants illegally absconded with the tips rightfully earned by their employed server. This collective action seeks to recover the unpaid wages, unpaid overtime wages, and other damages owed to Plaintiff and all other similarly situated employees who were employed by Defendants over the last three (3) years.

## CONDITIONS PRECEDENT

15.     All conditions precedent to jurisdiction and the filing of this lawsuit have occurred or been complied with.

## FACTS SUPPORTING MINIMUM WAGE & OVERTIME VIOLATIONS

16.     Sekai Night and Day, a/k/a Sekai is a Texas based company that operates as a club/lounge in the City of Houston.  Sekai's principal location is 1505 St. Emanuel St., Houston, TX 77003 and its hours of operation are Fridays from 10:00 p.m. to 2:00 a.m., Saturdays from 3:00 p.m. to 2:00 a.m., and Sundays from 3:00 p.m. to 8:00 p.m..

17.     E. Roberts and F. Azodinia are the owners of Sekai who executed the policies regarding payment to servers and management of servers, including Plaintiff.

18.     E. Roberts and F. Azodinia acted directly or indirectly on behalf of Sekai and, at all times mentioned herein were an "employer" or "joint employer" of Plaintiff and the Collective Members within the meaning of the FLSA.

19.     E. Roberts and F. Azodinia exerted operational and management control over Sekai, including day to day management. They were, and are, frequently present at, own, direct, control and manage the operations at Sekai.

20.     E. Roberts and F. Azodinia control the nature, pay structure, and employment relationship of Plaintiff and the Collective Members. E. Roberts and F. Azodinia had, at all times relevant to this lawsuit, the authority to hire and fire employees of Sekai, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, E. Roberts and F. Azodinia were responsible for the day-to-day affairs of Sekai. Specifically, E. Roberts and F. Azodinia are responsible for determining whether Sekai complies with the FLSA.

21.     At all material times, Sekai, jointly with its officers/owners E. Roberts and F. Azodinia, has been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because it has more than two employees at the club/lounge engaged in commerce, and/or who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were moved in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1). Specifically, Defendants' employees have sold, handled or otherwise worked with goods – such as tobacco products and a variety of food and beverage – that have been moved or produced in interstate commerce to Defendants' patrons. Additionally, Defendants' employees have handled materials that have been moved or produced in interstate commerce, which were used in the course of Defendants' business operations.

22.     At all times mentioned herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and are vicariously or strictly liable for the wrongful conduct of its employees and agents.

23.     At all times mentioned herein, Defendants acted in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiff and other similarly situated employees in that each of them exercised control over the wage payments and duties of the servers (i.e. waitresses, waiters, 'bottle girls' and the like).

24.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes responsibility for the acts and omissions of all other Defendants.

25.     At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject restaurant, particularly in the areas of terms and conditions of employment applicable to Defendants' servers.

26.     At all times during the three (3) years prior to the filing of this action, Defendants categorized all servers that they employed as "independent contractors" and have refused to pay any wages and overtime to such employees.

27.     In exchange for their labor, Plaintiff and the Collective Members were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiff and the Collective Members any hourly wage whatsoever for their hours worked.

28.     Because Defendants failed to pay their servers an hourly wage (less than minimum wage) Defendants' servers are required to rely on tips customers leave for them in recognition for the

service they provided. See *Montano v. Montrose Rest. Assocs.,* 800 F.3d 186, 190 (5th Cir. 2015) (a tip is "'a sum presented by a customer as a gift or gratuity in recognition of some service performed for him'") (quoting 29 C.F.R. § 531.52) (emphasis added).

29.     In addition, at no time during their employment were Plaintiff and the Collective Members paid the State and Federal required minimum wage of $7.25.

30.     Defendants never provided its servers with actual or constructive notice that their tips would be considered their wages.

31.     Plaintiff and Collective Members never agreed to waive an hourly wage and be paid by tips alone.

32.     Plaintiff was originally hired by Defendants as a server within the last three (3) years and was never paid on an hourly basis.

33.     The primary duty of a server at Sekai is to wait on Defendants' customers before, during, and after their drinks, bottles of alcohol, and meals by helping them place, receive, and pay for their orders. They also ensure the timely delivery of food and beverages by checking on their tables periodically throughout the service time.

34.     Plaintiff and the Collective Members often worked multiple shifts per week for Defendants. Plaintiff and the Collective Members were an integral part of Defendants' business which operates as restaurants and lounges.

35.     Defendants exercised significant control over Plaintiff's and the Collective Members' schedule and work during their shifts.

36.     Plaintiff and Collective Members never received checks that reflected standard employee deductions, including federal or state taxes.

37.     Upon information and belief, Defendants paid some employees in cash only.

38.     Upon information and belief, Defendants failed to keep any employee records.

39.     Defendants paid for the building used for Sekai, maintenance of the facilities, the sound system, food, beverages, hookah and hookah components, and inventory used at the facilities.

40.     Defendants made all hiring decisions regarding wait staff, bussers, cooks, security, managerial, and all other employees on the premises.

41.     Defendants' opportunity for profit and loss far exceeded Plaintiff's opportunity for profit and loss from work at Sekai.

42.     Service and servers are an integral part of Defendants' operations and Defendants need servers to successfully and profitably operate their business model.

43.     Defendants failed to maintain complete records of wages, fees, tips, and other gratuities and/or service charges paid to or received by Plaintiff and the Collective Members and failed to maintain and furnish wage statements to Plaintiff and the Collective Members.

44.     The amount of skill required of a server is more akin to an employment position than that of a typical independent contractor.  Further, Plaintiff and the Collective Members were made to wear specific uniforms over the course of their employment.

45.     Plaintiff and the Collective Members were not paid an hourly minimum wage or *any* hourly wage or salary, despite being present at Defendants' facility and required to work and serve its customers during any scheduled work shift.

46.     Plaintiff and Collective Members were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and required to work and serve its customers for longer than eight (8) hours per shift.

47.     Plaintiff and Collective Members employed by Defendants performed precisely the same job duties.

48.     Plaintiff and Collective Members employed by Defendants were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

49.     Defendants have never paid Plaintiff and Collective Members any amount as wages.

50.     Although Plaintiff and Collective Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

51.     The only source of monies received by Plaintiff (and the class she seeks to represent) relative to her employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiff and the Collective Members were required to pay to Defendants.

52.     Defendants' method of paying Plaintiff in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiff with the sole intent to avoid paying her in accordance with the FLSA; the fees taken from the servers' tips and described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fees.

53.     As a result of Defendants' across-the-board standard operating procedure of mischaracterizing servers as "independent contractors" and their consequential failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former servers who were employed by Defendants during the applicable limitations period would elect to participate in this action if provided notice of the same.

54.     Plaintiff is "similarly situated" to the 29 U.S.C. § 216(b) class of persons she seeks to represent and will adequately represent the interests of the class.

55.     After Defendants were informed of a potential suit, they attempted to circumvent the FLSA's requirements by requesting that all current (and some former) servers sign a "release" of liability without legal representation in an attempt to absolve them of any ramifications for these unpaid wages.   Specifically, the current servers lacked bargaining power and were more susceptible to coercion and the likely acceptance of an unfair settlement offer.

56.     This "release" included a small, yet likely insufficient, payment for wages owed to servers by Defendants.

### FACTS SUPPORTING TIP POOL & TIP CREDIT VIOLATIONS

57.     Plaintiff and the Collective Members hereby incorporate by reference the forgoing paragraphs as if set forth in full herein.

58.     Under the FLSA, Plaintiff and Collective Members are classified as "tipped employees" because they customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips while employed by Defendants.

59.     Plaintiff and the Collective Members were required to contribute a majority, if not all, of their tips to a tip pool.

60.     Under the FLSA's "tip credit" provisions—an affirmative defense—an employer may, under certain circumstances, pay "tipped employees" less than the minimum wage by taking a "tip credit" against the employer's minimum wage obligations from the tips its employees receive from customers. In other words, if an employer can prove it complied with the strict requirements for taking a tip credit, then the employer may be permitted in limited circumstances to pay its tipped employees as little as $2.13 per hour by taking a "credit" for a portion of the tips an employee earns up to a maximum tip credit of $5.12 per hour. *See* 29 U.S.C. 203(m).

61.     In order to take a credit for *any* portion of an employee's tips, an employer must first show compliance with the strict requirements for taking a "tip credit" *See* 29 U.S.C. 203(m).

62.     For example, an employer must advise its employee *prior* to taking a tip credit that the employer will be utilizing a tip credit and provide the employee with notice of each of the tip credit provisions required by the FLSA. *See e.g., Id*. (the tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [the tip credit]."). Defendants never advised nor provided notice to Plaintiff and the Collective Members that they would be utilizing a tip credit.

63.     More specifically, prior to taking a tip credit, "an employer must inform tipped employees of its use of the tip credit including [1] the amount of the employee's cash wage, the amount of the tip credit claimed by the employer, [2] that the amount claimed may not exceed the value of the tips actually received, [3] that all tips received must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips, and [4] that the tip credit shall not apply to any employee who has not been informed of all of these requirements." *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, at *5-6 (5th Cir. Mar. 18, 2022) (citing 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b)). None

of the aforementioned requirements were accomplished by the Defendants.

64.    An employer must also provide the employee with <u>written</u> notice of the information required by 29 C.F.R. § 516.28(a)(3). Specifically, the employer must provide all affected employees with written notice as follows: "[t]he amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week." *See* 29 C.F.R. § 516.28(a)(3). Defendants violated the FLSA, yet again, by failing to provide written notice to Plaintiff and the Collective Members of the information required by 29 C.F.R. § 516.28(a)(3).

65.    Defendants violated the tip credit by unlawfully "exercising control over a portion of their servers' tips." *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707, 714 (N.D. Ind. 1998); *see also Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 894 (D. Md. 2011) (finding violation of the FLSA where employer exercised control over employee's tips in violation of the tip credit provisions).

66.    Defendants unilaterally determined how to allocate tips from the tip pool—there was no agreement among the servers regarding the allocation of their tips from the tip pool. *See Reich v. Priba Corp.*, 890 F. Supp. 586, 596 (N.D. Tex. 1995) (holding "tipped employees must agree on the distribution of the tipped pool for the pool to be deemed valid.") (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979)); see also 29 C.F.R. § 531.54 (defining a permissible "pooling arrangement" as one where "the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves"). Because Defendants unilaterally decided, without input or agreement from Plaintiff and the Collective Members, how to distribute the servers' tips from the tip pool, Defendants did not comply with the FLSA and thus cannot claim a tip credit.

67.    Defendants illegally exercised control over Plaintiff's and Collective Members' tips when Defendants chose to utilize the tip pool to reduce their payroll expense and pad their bottom line. Defendants cannot prove that they fully distributed the tip pool solely among customarily and regularly tipped employees. *See Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011) (employer has "the burden to prove it operated a legal tip pool"); *see also Steele*, 826 F.3d at 242 ("The employer carries the burden to prove its entitlement to the tip credit."); *Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015) (holding employer "has the burden of establishing its entitlement to the tip credit").

68.    Because Defendants cannot prove that they fully and lawfully distributed the tip pool solely among customarily and regularly tipped employees, Defendants cannot utilize the tip credit to pay Plaintiff and the Collective Members. *See e.g., Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467 (5th Cir. 1979) (holding that TGI Friday's had the burden to prove a valid tip pool arrangement after its servers brought suit questioning the validity of the tip pool); *Wajcman v. Inv. Corp. of Palm Beach*, 620 F. Supp. 2d 1353, 1356 n.3 (S.D. Fla. 2009) (citing 29 U.S.C. § 203(m)) ("[i]f tipped employees are required to participate in a tip pool with other employees who do not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'").

69.    As a result of these violations, Defendants did not comply with the strict requirements for taking a tip credit and thus have lost any ability to rely on the tip credit to supplement their failure to pay Plaintiffs a minimum wage. Therefore, Defendants must compensate Plaintiff and all similarly situated employees—servers—the full minimum wage rate, unencumbered by the tip credit, for all hours worked. In other words, Defendants must account for the difference between complete lack of hourly wage ($0.00) to Plaintiff and Collective Members

and the full minimum wage ($7.25) required by the FLSA. In addition, Defendants are liable to Plaintiff and the Collective Members for all misappropriated tips, plus liquidated damages in an amount equal to all damages owed to them. Finally, Plaintiff and Collective Members are entitled to recover an additional award to compensate them for their attorneys' fees and costs.

70.     At all times relevant hereto, the Defendants knew of, approved of, and benefited from Plaintiff and the Collective Members' regular and overtime work. Plaintiff and the Collective Members were "tipped" employees, but not paid an hourly wage. Defendants knowingly, willfully, and/or with reckless disregard carried out their illegal pattern and/or practice of failing to pay hourly wages, overtime compensation, and the correct share of their tip with respect to Plaintiff and Collective Members. Defendant's method of paying Plaintiff and the Collective Members was not based on a good faith and reasonable belief that their conduct complied with the law.

## COLLECTIVE ACTION ALLEGATIONS

71.     Plaintiff and the Collective Members hereby incorporate by reference the forgoing paragraphs as if set forth in full herein.

72.     At all relevant times, Plaintiff and the Collective Members were individual "employees" of Defendants (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)).

73.     In addition to Plaintiff, Defendants employ many other servers who have the exact same job description as Plaintiff and who were paid by Defendants in the same manner as Plaintiff.

74.     Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as servers at any time during the three (3) years prior to the commencement of this action to present.

75.     Further, each Collective Member is similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage. Thus, although the amount of damages may vary from individual to individual, the damages can be calculated by using a single mathematical formula that is individually applicable to each Collective Member. The Collective Members are, therefore, similarly situated in terms of pay provisions.

76.     These non-exempt employees are entitled to the federally mandated minimum wage for any hours worked at or under forty (40) hours per week at a rate at $7.25 per hour, since Defendants violated the tip-pool law they lose the right to take a credit toward minimum wage.

77.     These non-exempt employees are entitled to overtime pay, at the rate of one and one-half (1½) their regular rate when those hours exceeded forty (40) hours per workweek, for the same reasons as Plaintiff, and are, therefore, similarly situated to Plaintiff. These employees are collectively referred to as the "Collective Members."

78.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Collective Members.

79.     Dozens of these employees have worked for Defendants over the last few years. Accordingly, Defendants' payroll scheme extends well beyond Plaintiff.

80.     No justification or exemption excused Defendants from paying Collective Members for all work performed and time spent working, and Defendants did not make a good faith effort to comply with the FLSA. As such, Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice regarding overtime compensation with respect to the Members of the Class.

81.    As such, Plaintiff and Collective Members bring their FLSA claims as a collective action on behalf of the Collective Members. These Collective Members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the collective members are properly defined as:

**"All current and former employees who worked at least one shift as a servers (ie. waitress, waiter or 'bottle girl') for Defendants in the three (3) years preceding the filing of Plaintiff's Original Complaint."**

## INDIVIDUAL LIABILITY UNDER THE FLSA

82.    In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit stated "[t]he dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

83.    Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). Factors related to "economic control," include ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees,

determine salaries, and the responsibility to maintain employment records. *Gray*, 673 F.3d at 355 (citing *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010)).

84.    E. Roberts and F. Azodinia, as owners and managers of Sekai, are each individually liable for failing to pay Plaintiff's and the Collective Members' wages. The actual identities of other managers and owners and/or affiliated companies are unknown at this time.

## CAUSES OF ACTION

### I.    Failure To Pay Minimum Wage Pursuant To FLSA, 29 U.S.C. § 206

85.    Plaintiff and the Collective Members hereby incorporate by reference the forgoing paragraphs as if set forth in full herein.

86.    Defendants failed to pay Plaintiff and the Collective Members minimum wage (or any wages) for all hours worked.

87.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff and the Collective Members the minimum wage under the FLSA.

88.    Throughout the relevant period of this lawsuit, there is no evidence that Defendants' conduct was in good faith and based on reasonable grounds. Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

### II.    Failure To Pay Overtime Wages Pursuant To FLSA, 29 U.S.C. § 207

89.     Defendants failed to pay Plaintiff and the Collective Members the applicable overtime wage for each hour in excess of forty (40) during each workweek in which Plaintiff and the Collective Members worked in violation of 29 U.S.C. § 207.

90.     An employer who pays a non-exempt employee on an hourly basis must pay time and a half for any hours worked over forty (40).

91.     Plaintiff and Collective Members are non-exempt employees who worked as employed servers for Defendants.  Even though Defendants did not pay Plaintiff and Collective Members on an hourly basis, they are not exempt from this section due to the fact that Plaintiff and Collective Members were misclassified as "independent contractors." Therefore, they should have been paid on an hourly basis as stated in the section above.

92.     Defendants failed to pay Plaintiff and Collective Members the applicable overtime wage for each hour in excess of forty (40) during each workweek in which Plaintiff worked in violation of 29 U.S.C. § 207. Specifically, Plaintiff generally worked between 40 and 60 hours per week.  Upon information and belief, there are Collective Members who often worked in excess of 60 hours.

93.     By failing to pay Plaintiff and Collective Members overtime at one-and-one-half times their regular rates for every hour that they worked over forty (40) hours in a workweek, Defendants, knowingly, intentionally, and willfully violated the FLSA's overtime provisions.


III.    UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203

94.     Plaintiff and the Collective Members customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore are "tipped employees" as defined in the FLSA, 29 U.S.C. § 203(t), see also 29 C.F.R. § 531.50.

95.    At all relevant times, Defendants were "employer(s)" or "joint employer(s)" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d).

96.    Under the FLSA:

"[a]n employer may not keep tips received by its employees for any purpose including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not it takes a tip credit."

29 U.S.C. § 203(m)(2)(B)

97.    Defendants required Plaintiff and the Collective Members to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customers leaving the tips (such as the busser, and security). *See* U.S. Department of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

98.    The contribution Defendants required Plaintiff and the Collective Members to make after each shift was arbitrary and capricious and distribution was not agreed upon by Plaintiff or other servers; rather, it was imposed upon Plaintiff and the Collective Members.

99.    By requiring Plaintiff and the Collective Members to pool their tips, Defendants essentially "retained" a portion of the tips received by Plaintiff and the Collective Members and used the tip money owed to the Plaintiff and the Collective Members to pay other non-tipped employees.

100.    Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiff and the Collective Members.

101.    At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiff and the Collective Members to contribute included non-tipped employees, and therefore, was statutorily illegal. In spite of this, Defendants willfully

failed and refused to pay Plaintiff and the Collective Members the proper amount of the tips to which they were entitled.

102.    Defendants' willful failure and refusal to pay Plaintiff and the Collective Members the tips they earned violates the FLSA.

### IV.    ILLEGAL KICKBACKS & FORCED TIPPING IN VIOLATION OF THE FLSA, 29 C.F.R. § 531.35

103.    Defendants required Plaintiff and the Collective Members to pay monetary fees to other Sekai employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

104.    Defendants' requirement that Plaintiff and the Collective Members pay fees to Defendants' other employees violates the "free and clear" requirement of 29 C.F.R. § 531.35.

105.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they are not entitled to utilize the FLSA's tip-credit provision with respect to Plaintiff's and the Collective Members' wages.

106.    Due to the violation stated above, all monetary fees imposed on Plaintiff and the Collective Members are classified as illegal kickbacks.

### DAMAGES

107.    Plaintiff and the Collective Members hereby incorporate by reference the forgoing paragraphs as if set forth in full herein.

108.    Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover from Defendants minimum wage compensation for each hour they worked and

an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

109.   Plaintiff and Collective Members are entitled to reimbursement of all misappropriated tips plus an equal amount as liquidated damages.

110.   Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

111.   As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. § 216(b) and 260, Plaintiff and the Collective Members are entitled to damages in the form of all misappropriated tips, plus interest as liquidated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

112.   Plaintiff and the Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

113.   Plaintiff and the Collective Members are entitled to recover from Defendants all fees that Defendants required Plaintiff and Collective Members to pay other employees in order to work at Sekai, involving but not limited to forced tip sharing.

## JURY REQUEST

114.   Plaintiff hereby requests a trial by jury.

## RELIEF REQUESTED

Plaintiff ad Collective Members respectfully request the following relief:

1.      An Order allowing this action to proceed as a collective action under the FLSA and directing notice to the Collective Members;

2.      Judgment awarding Plaintiff and the Collective Members all unpaid wages, unpaid overtime compensation, unpaid tips, liquidated damages, statutory penalties, civil penalties, attorneys' fees and costs under the FLSA;

3.      An award of pre-judgment and post-judgment interest on all amounts awarded at the highest rate allowable by law; and

4.      All such other and further relief that Plaintiff and the Collective Members are justly entitled.


Respectfully submitted,

**STEPHENS REED & ARMSTRONG, PLLC**

By:    */s/ Derrick A. Reed*
       **Derrick A. Reed**
       Attorney-in-Charge
       Federal I.D. No.: 899172
       State Bar No.: 24053780
       Email: derrick@srapllc.com
       2626 South Loop W., Suite 522
       Houston, Texas 77054
       Telephone: (281) 489-3934

       **ATTORNEYS FOR PLAINTIFFS**

**Of Counsel:**

**Marrick Armstrong**
Federal I.D. No.:  611068
State Bar No. 24057695
Email:  marrick@srapllc.com

**Ghazal A. Vahora**
Federal I.D. No.: 2861474
State Bar No.: 24094993
Email: ghazal@srapllc.com

**STEPHENS REED & ARMSTRONG, PLLC**
2626 South Loop W., Suite 522
Houston, Texas 77054
Telephone: (281) 489-3934
Facsimile: (281) 657-7050